**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION**

NAN WEI,                       )
                               )
        **Plaintiff,**       )
                               )
    **v.**                       )
                               )   **Case No. 4:11-cv-4028-SLD-JEH**
**DEERE & COMPANY,**     )
                               )
        **Defendant.**     )

**O R D E R**

Plaintiff Nan Wei brings this action against his employer, Defendant Deere & Company, alleging that Deere discriminated against him and then retaliated against him in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621. Before the Court are the parties' cross motions for summary judgment. For the following reasons, the Court GRANTS Deere's Motion for Summary Judgment, ECF No. 81, DENIES Wei's Motion for Summary Judgment, ECF No. 82, and GRANTS Deere's Motion for Leave to File an Attachment Under Seal, ECF No. 90.[1]

**BACKGROUND**

Having reviewed the statements of material fact and supporting exhibits in accordance with Local Rule 7.1(D), the Court constructs the following narrative from the undisputed facts as well as from the disputed material facts construing them in a light most favorable to the nonmoving party.

---

[1] The Court has reviewed the contents of Deere's Motion and the Exhibit referenced therein in accordance with Local Rule 5.10(A)(2). The Court determines that the referenced materials contain the confidential personnel information of Deere employees and that this information is properly subject to the Court's June 22, 2011 Protective Order. *See* ECF No. 10.

## A. Wei's History and Deere's Business Practices

Wei has been employed as a Project Staff Engineer at Deere since January 1, 2000. Def.'s Mot. Summ. J. ¶ 1; Pl.'s Resp. ¶ 1, ECF No. 85. Wei holds a doctorate degree in chemical engineering, has several patents, and has received innovation awards from Deere. Pl.'s SMF ¶¶ 3, 4, ECF No. 82-1. From 2007 to 2010, Deere rated Wei's annual "Overall Total Performance Rating" as "Successful" or "Highly Successful."[2]

As a Deere employee, Wei is subject to Deere's Business Conduct Guidelines and received training on the same. Def.'s Mot. Summ. J. ¶ 11. The Business Conduct Guidelines require that all books and records be kept accurately and that they fairly reflect all business transactions. *Id*. Wei is also subject to Deere's Travel Guidelines, which provide that Deere is not responsible for personal expenses incurred when extending business travel and indicate that medical expenses are not reimbursable. *Id*. at ¶ 8. When traveling on behalf of Deere, employees must submit certain information in order to be reimbursed for a meal expense: a description of the meal, the name of the establishment where the meal was had, and what meal was consumed (e.g., breakfast, lunch, dinner). *Id*. at ¶ 9. As of 2008, in order for a Deere employee to claim a cash reimbursement on his expense report, the employee was required to send receipts for any expenditure of $75 or greater.[3] Julia Mahoney-Hansen Dep. at 35-38, ECF No. 82-23. Until January 1, 2008,[4] Deere gave its employees additional compensation in the

---

[2] The "Overall Total Performance Rating" scale ranges from "Unsatisfactory Performance," "Performance Needs Improvement," "Successful Performance," "Highly Successful Performance," to "Outstanding Performance." Other possible ratings included "No Rating" or "Learning." Wei was given a "Successful Performance" rating for years 2007, 2009, and 2010, and a "Highly Successful Performance" rating in 2008. *See* Pl.'s Ex. 6, ECF No. 82-6 at 9, Pl.'s Ex. 9, ECF No. 82-9 at 12, 26, and Pl.'s Ex. 8, ECF No. 82-8 at 8.

[3] Notably, at some point prior to 2008 the receipt requirement was $25 and greater for meals. Julia Mahoney-Hansen Dep. at 37, ECF No. 82-23.

[4] Wei indicates that he was unaware the hardship pay system ended as of January 1, 2008. Pl.'s Resp. ¶ 7.

form of "hardship pay" for having to travel overnight to certain hardship locations. Def.'s Mot. Summ. J. ¶ 7.

A significant portion of Wei's work time in 2008 and 2009 was spent traveling in China. Pl.'s SMF ¶ 10; Pl.'s Ex. 9 at 14. Wei's duties involved new paint systems for two Deere factories in Xuzhou and Ningbo, China. Pl.'s SMF ¶ 7. Wei was also tasked with training and mentoring Marguerite Wu.[5] *Id.* at ¶ 8. Wei avers that Wu is "in her 30s." *See* Wei Aff. ¶ 1, ECF No. 82-2. Deere admits that it employed Wu in China but asserts that "[h]er age is unknown." Def.'s Resp. ¶ 8, ECF No. 84.

**B. Deere's Investigation of Wei**

In November of 2009, Kathy Harmon became Wei's supervisor. Pl.'s SMF ¶ 11. On November 18, 2009, Travel and Expense Department employee Linda McManus emailed Wei, stating that his travel expense report needed additional information. Def.'s Ex. 11 at 2, ECF No. 81-12. McManus indicated that she had forwarded a copy of Wei's report to Harmon for her review. *Id.* Harmon replied to both Wei and McManus, asking Wei to use his corporate credit card for all purchases and reminding him to provide receipts if his expenses exceeded $25. *Id.* at 1. Harmon also noted that some of Wei's expenses were over three months old and that he had reported ten charges for transportation on one day. *Id.*

On December 3, 2009, Harmon reported to Human Resources supervisor Julia Mahoney-Hansen that she was concerned that there was an inappropriate relationship between Wei and Wu and that she was troubled by inconsistencies in Wei's expense reporting. Pl.'s Ex. 21 at 1, ECF No. 82-19. While the investigation was ongoing in 2009, Wei told Harmon that he was 70 years

---

[5] Prior to 2009, Deere planned to hire local personnel in China to help support the paint process there. Def.'s Mot. Summ. J. at ¶ 13; Pl.'s Resp. ¶ 13; Wei Dep. 82-84, ECF No. 81-1. To that end, Neo Wang was hired in 2007 and Wu was hired in 2008. Def.'s Mot. Summ. J. at ¶ 13; Wei Dep. 86.

old; however, Harmon did not know Wei's age until he gave her this information. Def.'s Mot. Summ. J. at ¶ 2; Harmon Dep. 9–10, ECF No. 81-3. At some point before December 18, 2009, Harmon told Wei that there were concerns about his meal expenses; Wei replied that he was too busy to request reimbursement for hardship pay and other expenses, so he included such expenses in his meal reimbursement requests. Def.'s. Mot. Summ. J. at ¶ 21. Wei lists this as an undisputed material fact but qualifies that "the communication was coerced out of Dr. Wei becuse [sic] of Dr. Wei's desire to be quickly sent back to his project work in China. In reporting his meal expenses, he never tried to use them to cover his hardship pay of [sic] any other costs." Pl.'s Resp. at ¶ 21, ECF No. 85. The Court concludes that Wei's distinction is merely an attempt to put self-serving gloss on an already qualified admission. Wei's deposition testimony[6] and emails[7] make clear that during the investigation he told Harmon and others that it was his practice to include hardship pay and other expenses in his meal expenses when submitting his travel expense reports. Accordingly, the underlying factual assertion – that Wei

---

[6] The following exchange occurred during Wei's deposition:

Q: But you did tell Kathy Harmon on or about December 18th of 2009 that you were busy and that the meals included some things, and you weren't trying to get more money from Deere, and that they owed you something more? Did you tell her that?
A: That's – yes, I did, but that's because I told her I did not get more money from Deere.
. . .
Q: My question was, did you say in this e-mail – and then I quote this – "I used my meal expense to cover miscellaneous travel expenses because we do not have to turn in receipts with any single meal under $25?"
A: Yes, what I mean was could have.
. . .
Q: The e-mail does not say you could have covered other expenses?
A: That's what I should have said.
Q: It actually says you covered these expenses by using them in the meal expense tab; isn't that what it says?
A: I should have said I could have.
Q: That's not my question, Dr. Wei. My question is –
A: Yes, I wrote down – I did not put down I could have.

Wei Dep. at 117, 119, 121.

[7] *See* Wei's December 19, 2009 e-mail at 3, Def.'s Ex. 12 at 3–4, ECF No. 81-12; Wei's January 27, 2010 e-mail at 3, Def.'s Ex. 6 at 3, ECF No. 81-6.

indicated that he included hardship pay and other expenses in his meal expenses – is deemed admitted. On December 18, 2009, Harmon emailed Wei regarding his travel expenses and noted that he reported three meals a day for each day and that the amount was always approximately the same; she reminded Wei to use his corporate credit card and to only turn in those expenses that he had actually incurred. Def.'s Mot. Summ. J. at ¶ 19; Def.'s Ex. 11 at 4.

In January 2010, Wei became aware that Deere was investigating his travel expense reporting. Def.'s Mot. Summ. J. ¶ 22. Wei's management team restricted him from traveling while the investigation was ongoing. *Id.*; Mahoney-Hansen Dep. at 74–75. When deposed, Wei testified that he would request reimbursement for three meals a day to indicate that he ate multiple meals, even though on any given day he might eat two, three, or four meals. Wei Dep. at 97–107, ECF No. 81-1. The total amount of meal reimbursement Wei requested on his travel expense reports was below the amount Deere required to submit a receipt or itemization. Pl.'s SMF ¶ 33. During the investigation, Wei emailed Joy Peterson, a Deere employee who worked in international human resources, that "instead of taking the time to report the hardship payments properly, I added about $10 a day to my daily meal expense and increased the daily meal expense to $35 to $45 range." Wei Dep. at 224 at 225. Wei attempted to qualify this admission, stating "[A]fter they told me that I spend too much money on meal expense, I ask [Harmon], How much are you thinking? She says, maybe about ten. I don't know. Okay, $10, my hardship pay wouldn't even cover, so I tried to find an amount of money to cover they claim that I overcharged, so. . . . that's what I told [Peterson] to get some number from her, so I could send it to [Mahoney-Hansen] and say, Hey, look, I didn't get too much money." Wei Dep. at 246.

Mahoney-Hansen provided the results of the entire investigation[8] to her manager in human resources, Mike Addington, who determined the course of discipline. Def.'s Mot. Summ. J. ¶ 37; Mahoney-Hansen Dep. at 57. Wei was found to have violated Deere's Business Conduct Guidelines by failing to provide accurate financial records and by not submitting actual expenses.[9] Def's Mot. Summ. J. ¶ 40; Mahoney-Hansen Dep. at 92–94; Def.'s Ex. 17 at 1–2, ECF No. 81-18. Wei was disciplined for knowingly and repeatedly (1) misusing the meal expense category to reimburse himself for other expenses, (2) not following Deere processes for medical/dental treatment and hardship pay, and (3) not properly recording vacation time.[10] Def.'s Mot. Summ. J. at ¶ 41; Def.'s Ex. 17 at 1–2. Ultimately, the allegation regarding an improper relationship between Wei and Wu was found to be unsubstantiated. Def.'s Mot. Summ. J. at ¶ 35.

## C. Deere's Disciplinary Action Against Wei

On March 2, 2010, Deere took the following disciplinary action pursuant to its investigation: (1) Wei was ineligible for a Mid-Term Incentive ("MTI") payout if one was awarded for 2010; (2) Wei was prohibited from travelling internationally; (3) Wei's job responsibilities would change to encompass non-paint system responsibilities including but not

---

[8] On January 28, 2010, investigator Steven Brockway emailed another investigator that management had decided to terminate Wei for expense fraud. Pl's SMF at ¶ 25; Pl.'s Ex. 19 at 8, ECF No. 82-19. Deere disputes this statement to the extent that Harmon, Mahoney-Hansen, and Glenn Baker have no recollection of any decision to terminate Wei. Def.'s Resp. ¶ 25.

[9] Wei denies this statement, claiming "[t]here were no findings that Wei violated the travel expense reporting policy . . . ." Pl's Resp. ¶ 40. Wei's denial is unsupported by any citation to evidence; Deere's statement is therefore deemed admitted.

[10] Wei includes this statement in his undisputed material fact section, yet only "admit[s] he was improperly disciplined and state [sic] that he followed Deere's guidelines." Pl's Resp. at ¶ 41. To that end, Wei reiterates that his meal expenses had been previously approved and that he did not claim medical or dental treatment and hardship pay in his travel expense statement. The Court has previously addressed Wei's qualified admission with respect to including hardship pay and other expenses in his meal expense category. Deere's statement is deemed admitted in this respect. Wei also claims that he was not trained regarding how to use Deere's vacation-recording tool, but fails to provide any citation to the record. As such, this portion of Deere's statement is also deemed admitted.

limited to lab paint testing and other duties as assigned; (4) any time spent supporting paint systems internationally would be done remotely; and (5) based on the change in job duties, Wei's work would be evaluated and properly graded. *Id.* at ¶¶ 39, 42. The MTI that Wei could have been eligible for ranged between $8,000 and $10,000. *Id.* at ¶ 44; Mahoney-Hansen Dep. 77. Deere's disciplinary action did not affect Wei's labor grade, and he was not demoted in 2010. Def's Mot. Summ. J. at ¶ 45; Wei Dep. at 255–256. In fact, Wei was told by Deere managers that the investigation and discipline had nothing to do with his performance in China and that Deere was happy with his performance in China. Def.'s Mot. Summ. J. at ¶ 47; Wei Dep. at 270–271.

### D. Wei's Job Duties After the Disciplinary Action and Deere's Alleged Favoritism Towards Employees Younger than Wei

Wei asserts that Zhanchao Tong, an engineer in his mid-thirties, assumed Wei's job duties in China. Pl.'s SMF at ¶ 43; Wei Aff. at ¶ 1, ECF No. 82-2. Deere responds that Wei continued to support projects in China and was not replaced by any other employee. Def.'s Resp. at ¶ 43. Wei claims that after he was prohibited from traveling, Chinese factory managers made several requests for him to return in order to assist in the design and construction of their paint systems. Pl.'s SMF at ¶¶ 21, 44. Deere admits that various factory managers inquired about – but did not request – Wei's return to China. Def.'s Resp. at ¶ 21. Deere asserts that Wei's travel restriction did not cause any project delays. *Id.*

On August 29, 2011, Harmon asked Wei in front of his coworkers and in reference to Wei's newly-purchased used car, newly-purchased old house, and new wife, "Is your wife also old and used?" Pl.'s SMF ¶ 12; Def.'s Mot. Summ. J. at ¶ 14; Wei Dep. at 261–265. Wei avers that during a retirement coffee gathering another manager in Wei's division, Laurie Zelneo asked him when he would retire. Pl.'s SMF at ¶ 13. Wei's colleague Paul Flynn commented during a

group meeting where Harmon was present that he and Wei might want to retire soon. Def.'s Mot. Summ. J. at ¶ 14; Wei Aff. at ¶ 5.

Wei asserts that younger Deere employees received little or no disciplinary action for committing travel expense violations comparable to his. Pl.'s SMF at ¶¶ 46–48. Wei only asserts that one of these employees, Wu, is younger than forty. *Id*. Deere states that it imposes discipline according to individual investigation results – sometimes of a harsher degree than what was accorded to Wei. Def.'s Resp. at ¶¶ 46, 48. Deere argues that it only compared Wu's travel and expense reports during its investigation into Wei and that it did not conduct any formal investigation into improprieties in her reports. Def.'s Resp. at ¶ 47. To that end, Deere stresses that, as a China employee, Wu is subject to different travel guidelines, reporting systems, discipline, and legal requirements. *Id*.

In 2013, Wei claims that his job title was downgraded to one of lower competence and educational requirements and that Harmon reassigned three projects (the Sirhind Project, the Paint Standard Project, and the Seeding Project) to 58 year old Kit Edgeworth. Pl.'s SMF at ¶ 49. Deere responds that Wei was not demoted in any manner and that his duties, pay, and grade level did not change with the change in his job title. Def.'s Resp. at ¶ 49. Deere claims that the Sirhind Project was reassigned to another engineer to assist while Wei was on vacation, *id*., but Deere's citations do not support this assertion. Rather, both Wei and Harmon's testimony indicates that Harmon felt the Sirhind Project needed strong, on-site leadership skills. Wei Dep. at 167–69; Harmon Dep. at 144–45, 164–65. Deere maintains that the Paint Standard Project was reassigned because Harmon determined that Wei was not making adequate progress within the project's timeframe. Def.'s Resp. at ¶ 49. Finally, Deere claims that the Seeding Department Project was reassigned after a Plant Manager requested Wei be removed from the

project. *Id.*; Harmon Dep. 151. Wei disputes that the Plant Manager made any such request. Pl.'s SMF at ¶ 49; Wei Dep. at 172.

### E. Procedural History of Wei's Related Cases

Wei filed his complaint with the EEOC in September 2010. The Equal Employment Opportunity Commission ("EEOC") issued its right to sue notice on January 8, 2011, prompting Wei to file the instant lawsuit against Deere on April 6, 2011. Wei filed a substantively similar lawsuit, Case No. 4:11-cv-04034, in the Circuit Court of Rock Island on March 29, 2011 which Deere removed to this Court on May 2, 2011. On May 31, 2011, the Court accepted removal of the later-filed case and dismissed the Illinois Human Rights Act claim therein without prejudice. The Court consolidated the two cases after concluding that the remaining cause of action in the removed case and the instant lawsuit were identical. On June 10, 2013, the Court granted Wei's Motion to Amend his Complaint which added one claim for retaliation brought under the ADEA. Wei never filed any subsequent claim for retaliation with the EEOC. Def.'s Mot. Summ. J. at ¶ 52.

### DISCUSSION

### I. SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes regarding material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Courts construe all facts in a light most favorable to the nonmovant and draws all reasonable inferences in favor of the nonmovant in deciding whether genuine issues of material fact exist. *Id*. at 255. However,

neither the "mere existence of some alleged factual dispute between the parties," *id*. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), will defeat an otherwise properly supported motion for summary judgment.

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The party seeking summary judgment on a claim on which the nonmovant bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the nonmovant's case. *Id*. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Therefore summary judgment is inappropriate if, after drawing all reasonable inferences in favor of the nonmovant, genuine doubts remain and a reasonable fact finder could find for the nonmovant. *See Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989)). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his case, summary judgment is not only appropriate, but mandated. *Matsushita Elec. Indus. Co.*, 475 U.S. 585–87. Further, a failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## II.	ADEA AGE DISCRIMINATION CLAIM

### A.	LEGAL STANDARD

The ADEA makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see also* 29 U.S.C. § 631(a) (limiting the ADEA's protections to those over forty years of age). To prevail under the ADEA, a plaintiff must show by a preponderance of the evidence that his age was the but-for cause of the adverse employment action. *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 604 (7th Cir. 2012).

A plaintiff may set forth an ADEA claim through the direct or indirect method of proof. *Van Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010). Wei has chosen to proceed under the direct evidence method. Evidence offered under the direct method "must allow a jury to infer more than pretext; it must itself show that the decisionmaker acted because of the prohibited animus." *Id.* at 298. To satisfy his burden under the direct method, Wei must put forth evidence showing an admission by the employer or circumstantial evidence that "points directly to a discriminatory reason for the employer's action." *Fleishman*, 698 F.3d at 603. (citations omitted). "We have also called this a convincing mosaic of circumstantial evidence, but fundamentally the plaintiff must connect the circumstantial evidence to the employment action such that a reasonable juror could infer the employer acted for discriminatory reasons." *Id*. Circumstantial evidence can take many forms, including "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a

pretextual reason for an adverse employment action." *Teruggi v. CIT Group/Capital Fin., Inc.*, 709 F.3d 654, 659–60 (7th Cir. 2013).

## B. ANALYSIS

Wei bases his age discrimination claim on the following factors: (1) the suspicious timing of his investigation, *see* Wei's Mem. Supp. Mot. Summ. J. 7–8, ECF No. 82-3; (2) Deere's shifting reasons for its investigation, *id.* 8–9; (3) ageist remarks by Deere employees, *id.* at 9; (4) disparate treatment in favor of younger Deere employees, *id.* at 9–11; and (5) the reassignment of Wei's job duties to a younger employee, Tong, in 2010, *id.* at 11. The Court concludes that Wei's age discrimination claim cannot survive summary judgment because the record contains neither explicit declarations of a discriminatory motive nor sufficient circumstantial evidence for a rational jury to infer discrimination.

### 1. Suspicious Timing and Shifting Reasons

Wei argues that the timing of Harmon's December 2009 report is suspicious in part because she became his supervisor shortly before then, in November 2009. Wei alleges that Harmon's inability to "remember the names of the persons who reported the inappropriate relations," *id.* at 7, and the investigators' lack of "any supporting evidence. . . proves that this allegation was a pretext to discipline Dr. Wei." *Id.* Wei questions the truthfulness of the investigators, stating that "[e]ven though they found no evidence, the investigators reported that management decided to terminate Dr. Wei." *Id.* Finally, Wei argues that the initial investigation into Wei's allegedly inappropriate sexual behavior with Wu was redirected to an investigation into his travel expense reports, thus representing a shifting explanation for his adverse employment action. *Id.* at 8–9.

12

The Court finds that McManus highlighted discrepancies in Wei's expense reports and forwarded them on to Harmon in November 2009 – the same month that Harmon became Wei's supervisor. Def.'s Ex. 11 at 2; Pl.'s SMF ¶ 11. Shortly thereafter, on December 3, 2009, Harmon submitted her report to Mahoney-Hansen concerning Wei's expense reports and the alleged Wu relationship. Contrary to Wei's contentions, this timeline of events does not support any inference of suspicious timing. Moreover, the Court notes that Harmon testified that Dave Wassell was one of her sources regarding the alleged relationship with Wu. Harmon Supp. Dep. 7–8, ECF No. 82-24. The record does not support Wei's belief that the investigation shifted from focusing on the alleged Wu relationship to Wei's travel expense reports. Rather, Harmon reported both concerns on December 3, 2009, to Mahoney-Hanson. Pl.'s Ex. 19 at 1, ECF No. 82-19.

As indicated above, Wei may not satisfy his burden by relying on conjecture or presumption in place of evidence; rather, the evidence must point directly to a discriminatory reason for the defendant's action. *Fleishman*, 698 F.3d at 603. Wei provides absolutely no support for his theories of suspicious timing and shifting reasons and offers little more than "an amorphous litany of complaints about a myriad of workplace decisions." *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001).

## 2. Ageist Remarks by Deere Employees

Wei next asserts that Harmon's August 29, 2011 comment demonstrates an ageist bias. It is important to note that, while unprofessional, the comment was explicitly in reference to Wei's wife – not Wei. Even if the Court were to consider Harmon's comment as one concerning Wei's age, and were to combine it with the retirement comments made by Flynn and Zelneo, these remarks do not point to a discriminatory motive. To raise an inference of discrimination,

comments must be "(1) made by the decision maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 491 (7th Cir. 2007). Wei does not argue that Flynn or Zelneo were "decision makers" with respect to his disciplinary action, and thus their comments are of no import. Although Harmon made the decision to report Wei, the comment she made postdated the disciplinary decision by at least seventeen months and was not in reference to the adverse employment action. Accordingly, the ageist remarks complained of by Wei do not support his allegation of age discrimination.

### 3. Disparate Treatment of Younger Deere Employees

Wei also claims that several younger Deere employees who were accused of travel and meal expense reporting errors "received little more than a warning, and none of the adverse employment action received by Dr. Wei, including a reprimand, loss of bonus, restriction on foreign travel, and loss of project manager job duties, and the threat of demotion." Pl.'s Mem. Supp. Mot. Summ. J. at 9–10. Deere responds that the majority of employees Wei designates are either over 40 years of age, such that they are within the same protected class as Wei, or Wei fails to specify their age, so that it is unknown whether they are outside of the protected class. Def's Resp. at 18–20. Deere argues that Wu is the only employee identified by Wei who is outside of the protected class but that she is not similarly situated because, "as an employee based solely in China . . . Ms. Wu is not subject to the same guidelines as Wei . . . [and] Ms. Wu would also be governed by Chinese law." *Id.* at 20.

The Court agrees that, barring Wu, the employees Wei cites as being similarly situated are either not appropriate comparators, are within Wei's protected class, or they lack any

evidence regarding their ages.[11]  Wei has not produced facts demonstrating that Wu shared a similar record of misconduct, performance, qualifications, or disciplining supervisors such that their different treatment reflects a discriminatory intent on the part of Deere.  *See Harris v. Warrick Cnty. Sheriff's Dep't*, 666 F.3d 444, 449 (7th Cir. 2012) (holding that the plaintiff failed to identify a similarly situated employee because his comparators had not "violated standard operating procedures, disobeyed direct orders, or show[n] a lack of commitment to the job during their probationary periods" as the plaintiff had).  For example, Wei has not put forth evidence that Wu admitted that it was her practice to include hardship pay and other non-meal expenses in her meal expenses when submitting her travel expense reports.  Nor has Wei put forth evidence that he and Wu shared the same supervisor.  "[W]hen uneven discipline is the basis for a claim of discrimination, the most-relevant similarities are those between the employees' alleged misconduct, performance standards, and disciplining supervisor."  *Rodgers v. White*, 657 F.3d 511, 518 (7th Cir. 2011).  Ultimately, the evidence that Wei presents is either irrelevant or insufficient to support a reasonable inference of discrimination.  *See Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 763 (7th Cir. 2001) ("[I]t is simply not true, we want to emphasize, that if a litigant presents an overload of irrelevant or nonprobative facts, somehow the irrelevancies will add up to relevant evidence of discriminatory intent. They do not; zero plus zero is zero.").

---

[11] The Court notes that in his Reply, Wei disputes Deere's claim that "similarly situated employe[e]s who are favorably treated must be younger than 40 years of age," Pl.'s Rep. at 10, ECF No. 88.  Wei is correct.  *See Tubergen. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470 at 475 n.4 ("Under the ADEA, in the case of younger employees that fall above the age of forty, the age difference must be ten years or greater in order to be presumptively substantial."); *see also Gurley v. LaHood*, 504 Fed. Appx. 498, 501 (7th Cir. 2013).  However, the Court concludes that the three employees Wei points to who had an age difference of ten years or more – Ravi Chadha (age 48), Ronnie DeVriendt (age 54), and Clinton Schwartz (age 44) – are not appropriate comparators because Wei has failed to point to any evidence that they were similarly situated.  *See Martino v. MCI Communs. Servs.*, 574 F.3d 447, 454 (7th Cir. 2009) (explaining that similarly situated employees are those with the same manager and same responsibilities); *see also Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 860 (7th Cir. 2008) ("A similarly situated employee need not be identical, but the plaintiff must show that the other employee dealt with the same supervisor, subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish his conduct or the employer's treatment of him.")

The Court concludes that Wei has failed to present a sufficient mosaic of circumstantial evidence that he was treated differently from Wu, the only alleged comparator outside the protected class.

### 4. Reassignment of Wei's Duties to a Younger Employee

The Court next turns to Wei's remaining assertion that he was "replaced by a younger engineer[] in China, named Zhanchao Tong, who is in his mid 30s." Pl.'s Mem. Supp. Mot. Summ. J. at 11. Wei argues that his replacement by Tong is circumstantial evidence of employment discrimination, and points to Wei's qualifications to lead the paint line construction projects in China, his positive performance evaluations, and the repeated requests from factory managers that Wei be allowed to return. *Id.* Deere responds that Wei and Tong had different duties: Tong "was hired as a Chinese employee employed in China . . . Wei, on the other hand was . . . assigned to the corporate offices to provide support from the corporate offices to various countries and projects throughout the world, including China." Def.'s Resp. at 20–21. Deere argues that Tong is not a replacement because the "evidence makes clear, and Wei admitted, there was a plan in place to hire additional employees in China to support the paint system construction projects in China with less corporate support prior to 2009." *Id.* at 21.

To the extent Wei claims he was replaced by Tong in that Tong assumed Wei's duties, Wei's own deposition testimony undermines him. *See* Wei Dep. at 82–83 (wherein Wei avers that Deere needed local people to support the paint process in China and that Wei suggested that Deere hire Chinese engineers so that Wei could train them to support Deere's paint processes locally.) Under the direct method, Wei's replacement theory could perhaps serve as another piece of circumstantial evidence. However, standing alone the allegation is insufficient to support Wei's claim of age discrimination unless it is combined "together with other facts." *Perry v. Bath & Body Works, LLC*, 993 F. Supp. 2d 883 (N.D. Ind. 2014) (citing *Hobgood v. Ill.*

*Gaming Bd.*, 731 F.3d 635, 644 (7th Cir. 2013)).  Even if Wei's evidence showed that he was qualified for Tong's job but was replaced by Tong and that Deere's reasons were a pretext, *see Sun v. Bd. of Trs.*, 473 F.3d 799, 812 (7th Cir. 2007), that alone would not be sufficient to survive summary judgment under the direct method. *See Van Antwerp*, 627 F.3d at 298 ("Evidence offered under the direct method must allow a jury to infer more than pretext; it must itself show that the decisionmaker acted because of the prohibited animus." (internal citations omitted)).

### III.    ADEA RETALIATION CLAIM

#### A.  LEGAL STANDARD

The Court first dispenses with Deere's argument that, because Wei did not bring a charge of retaliation before any administrative agency, his claim should be barred for failing to exhaust his administrative remedies.  If a plaintiff believes that an employer has discriminated and retaliated against him prior to the filing of his EEOC charge, he must include both claims in his charge. *See Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864–65 (7th Cir. 2010). However, the Seventh Circuit has clearly stated that an exception to the exhaustion rule exists in situations such as Wei's.  *Horton v. Jackson Cnty. Bd. of Cnty. Comm'rs*, 343 F.3d 897, 898 (7th Cir. 2003) ("[R]etaliation for complaining to the EEOC need not be charged separately from the discrimination that gave rise to the complaint . . . ."); *Gawley v. Ind. Univ.*, 276 F.3d 301, 314 n.8 (7th Cir. 2001) ("Of course, an employee is not required to file a separate EEOC charge alleging retaliation when the retaliation occurs in response to the filing of the original EEOC charge."). Accordingly, Wei's retaliation claim survives summary judgment as to this argument by Deere.

Under the direct method of proof for an ADEA retaliation claim, a plaintiff must show: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action;

and (3) there is a causal connection between the two. *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 657 (7th Cir. 2012). "[R]etaliation must be a but-for cause of a materially adverse action, not merely a contributing factor." *Meade v. Kroger*, 858 F. Supp. 2d 977, 2012 U.S. Dist. LEXIS 32678, *43 (N.D. Ind. 2012) (citations omitted).

## B. ANALYSIS

Wei bases his retaliation claim on the following incidents: (1) his alleged demotion in 2013; and (2) Harmon's decision to reassign three of Wei's projects. Pl.'s Mem. Supp. Mot. Summ. J. at 12. The record evidences that Wei filed his EEOC charge in September of 2010, Def.'s Mot. Summ. J. at ¶ 52, whereas the retaliation Wei complains of occurred "in the first half of 2013." Pl.'s Mem. Supp. of Mot. Summ. J. at 12. Deere argues that its decision to reassign Wei's work and change his job title did not materially alter the terms and conditions of his employment, such that its actions did not constitute adverse action. Wei responds that these actions did constitute adverse action because the projects reassigned to Edgeworth were Wei's "most important projects" and his job title was changed "to one that required less education and competence." Pl.'s Resp. at 12.

It is well-settled that the filing of an EEOC charge is considered a statutorily protected activity for purposes of asserting an ADEA retaliation claim. *See, e.g.*, *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 658 (7th Cir. 2012). Deere does not dispute that Wei has satisfied the first requirement, so the Court turns to the second and third requirements of an ADEA retaliation claim.

The showing Wei must make to set out an adverse employment action required for a retaliation claim is lower than that required for a discrimination claim; he must only show that the Deere's action would cause a "reasonable worker" to be dissuaded from making or

supporting a charge of discrimination. *Chaib v. Indiana*, 744 F.3d 974, 986-87 (7th Cir. 2014) (*quoting Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2409 (2006)).  However "petty slights or minor annoyances that often take place at work and that all employees experience" do not qualify as adverse employment actions; the action must be materially adverse. *Burlington N.*, 126 S. Ct. at 2415.  The determination of whether an action qualifies as materially adverse is fact dependent. *Id.* ("We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.").  Examples of adverse actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Barton v. Zimmer, Inc*., 662 F.3d 448, 456 (7th Cir. 2011).  Although a close question, in applying this standard to the facts of this case, the Court determines that there is a sufficient evidentiary basis to support a jury's finding on Wei's retaliation claim with respect to the adverse employment action element.

Wei claims that "Harmon took away [his] most important projects," Pl.'s Mem. Supp. Mot. Summ. J. at 12, and there remain disputes of material fact concerning whether the Sirhind Project was reassigned due to Wei's unavailability while he was on vacation and whether the Plant Manager of the Seeding Department Project requested Wei be removed from the project. The Court cannot conclude that these reassignments were minor annoyances.  In asserting that his "most important" projects were given to Edgeworth, a reasonable jury could find that the reassignments diminished his reputation or career advancement opportunities.  *Stephens v. Erickson*, 569 F.3d 779, 790–92 (7th Cir. 2009) ("Our decisions involving a transfer or reassignment of job responsibilities indicate that such an action is not materially adverse unless it

represents a significant alteration to the employee's duties, which is often reflected by a corresponding change in work hours, compensation, or career prospects.")  The same cannot be concluded of the change to Wei's job title; Wei points to no evidence showing that the change resulted in a decreased salary or that the 2013 title is somehow less distinguished on its face than his previous title.

However, even if the three reassignments constituted materially adverse actions, Wei has not established a causal connection sufficient to justify a trial on his retaliation claims.  Wei broadly points to Harmon's "progressively poorer performance evaluations," Pl.'s Mem. Supp. Mot. Summ. J. at 12, but specifies that it was Harmon's evaluation comments (as opposed to her overall evaluations) that were "getting worse and worse," Wei Dep. at 198.  To that end, Wei admitted that Harmon rated him as successfully performing from 2009 through 2012.  *Id.*  Unless the "adverse impact [came] on the heels of the protected activity," – and in this case, more than two years elapsed between Wei's EEOC filing and the three reassignments – Wei would typically have to show additional evidence beyond suspicious timing in order for a factfinder to infer retaliatory motive. *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009) (citations omitted).  Because Wei provides no further evidence on this point, the Court concludes that he has not established a causal connection and that his retaliation claim fails.

## IV.    CONCLUSION

For the aforementioned reasons, the Court GRANTS Deere's Motion for Summary Judgment, ECF No. 81, DENIES Wei's Motion for Summary Judgment ECF No. 82, and GRANTS Deere's Motion for Leave to File an Attachment Under Seal, ECF No. 90.  As a result of these rulings, the Court DIRECTS the Clerk to enter judgment in this case and Case No. 4:11-cv-04034.

Entered this 19th day of September, 2014.

s/ Sara Darrow

SARA DARROW
UNITED STATES DISTRICT JUDGE
